This is an appeal from the transfer inheritance tax assessed by the commissioner upon the transfers of property taking place under the will of Lillian O. Watson, deceased, — a resident of New Jersey who died December 22, 1933. The assessment is challenged on the sole ground that the commissioner erred in refusing and failing to deduct from the decedent's gross estate the amount of a claim ($19,592.02) of James P. Watson, and therefore computed and assessed the taxes on the basis of a net estate that much larger then he should have done.
The will in question (disregarding several gifts of minor value) devised to Mr. Watson a life estate in decedent's residence; *Page 613 
gave to her executors a trust fund of $15,000 for the payment of an annuity to her sister Amelia Bailey; and gave the remainder of the trust fund to Mr. Watson and four others (nieces and a nephew); and devised and bequeathed all the rest and residue of her estate to the same four (nieces and nephew).
Mr. Watson claimed that decedent and himself had entered into a valid contract in her lifetime, whereby she had bound herself to transfer to him her entire estate, (subject to payment of her debts), by will at her death. He filed a bill in chancery against the executors and the other beneficiaries named in the will, seeking enforcement of the right so claimed by him. That suit resulted in a decree entered by consent of all parties for the purpose of effectuating an agreement for settlement arrived at by the parties.
By the terms of that decree, the complainant Mr. Watson retained all the interests given and bequeathed to him under the terms of the will; the four residuary beneficiaries were required to convey to him the real estate interests devised to them by the will and having a value of $5,000; and the executors were required to pay to him $10,356.62 in cash and transfer to him certain personal assets of the estate of the value of $4,235.40. Except for this agreement and decree the executors would have paid to the said residuary beneficiaries the cash and personal assets aforesaid, or the equivalent thereof; so that the effect of the transaction was to transfer to Mr. Watson $19,592.02 more of decedent's estate than was given to him by the terms of the will and to reduce by the same amount the portion of the estate which would otherwise have been enjoyed by the residuary beneficiaries.
The commissioner, in computing the tax, disregarded the agreement and decree, — made his computation on the basis of the decedent's net estate without deduction of the $19,592.02 or any part thereof as a debt of decedent or decedent's estate; and assessed the taxes on the basis of the gifts as specified in the will. Appellants contend that this $19,592 so recovered by Mr. Watson in his suit should have been deducted as a debt in arriving at the value of the interests *Page 614 
passing to the beneficiaries under the will, and that the failure of the commissioner to make such deduction was erroneous and resulted in the assessment of too high a tax on each of the four residuary beneficiaries.
The statute, (P.L. 1909, c. 228, as amended by P.L. 1931, c.303, p. 749), imposes taxes on the transfers of property by will, — such taxes to be computed at specified rates (varying as to different classifications of beneficiaries) on the value of the property so transferred; and provides that in determining such value "the following deductions and no others shall be allowed: Debts of the decedent owing at the date of death * * * the ordinary expenses of administration" (and certain other deductions not presently important). Obviously the $19,500 in question was not an "ordinary expense of administration." It seems equally clear that it was not a debt of the decedent, or at least that it was in nowise established as such a debt within the meaning and intent of the statute.
It will scarcely be contended that the statute authorizes any deduction in respect of an indebtedness which may technically exist but which does not and will not result in any diminution of the decedent's estate, — as for instance the amount of a promissory note made by decedent on which suit is brought by the holder against the executors who successfully plead the statute of limitations. The debt technically exists, but the estate is not thereby diminished.
Or suppose decedent to have had in her hands $10,000 belonging to A., and to have purchased therewith, without A's authorization, knowledge or consent, certain shares of stock in her name as trustee for A, which stocks have a market value at decedent's death of only $5,000, but at the time A learns of the facts have increased in value to over $10,000, so that A ratifies the transaction and accepts the stock. Legally there was at the death of decedent a debt of $10,000 owing by her to A, which would have diminished the value of the taxable estate as of the date of death by $5,000, but in fact that debt in nowise diminished the property passing to beneficiaries under decedent's will. *Page 615 
The statutory provision for debt deduction is in reference to computation of the value of the property transferred and obviously means only such debts as actually diminish the property passing to the beneficiary or to the intestate successor.
The effect of the contract between decedent and Mr. Watson, (assuming such a contract to have been duly proven), did not result in the creation of a debt on the part of decedent; it resulted in the creation of a trust, just as in the case of the usual contract for the sale and conveyance of land. Haughwoutand Pomeroy v. Murphy, 22 N.J. Eq. 531, at 536.
By reason of the breach of the contract by decedent, — by her failure to perform her promise, — Mr. Watson may perhaps have become clothed with a right of action at law, on a claim possibly for debt, possibly for damages. See Bente v. Bugbee,103 N.J. Law 608, at pp. 609-611 and cases cited; 137 Atl. Rep. 552.
Respondent contends that there would be no right of action at law for debt because such action lies only for the recovery of a sum certain or readily ascertainable and on an obligation payable in money only, 18 C.J. p. 4; that there would be no right of action at law of any kind, but only a right remediable only in equity, citing Lawrence v. Prosser, 88 N.J. Eq. 43, 101Atl. Rep. 1040; Welsh v. Hour, 100 N.J. Eq. 417, 136 Atl. Rep. 327;Brooks v. Yarborough, 37 Fed. Rep. 2d 527.
In any event, assuming he had a right of action at law for debt, it was alternative with his right of action in equity to enforce the trust; he made his election and chose the latter; he sued in equity to compel the transfer of decedent's estate to him by those to whom it had been transferred by decedent's will. If any "debt" did exist, it resulted in no diminution of the estate which passed by the will; the decree in chancery was not for the payment of a debt but for the transfer of property decreed to be held in trust for him by those to whom it had been transferred by decedent's will.
In Bente v. Bugbee, supra, the claimant did sue at law for debt or damages for decedent's failure to perform a *Page 616 
promise to leave by will, and recovered a judgment; instead of suing in equity to enforce a trust against the testamentary transferees. The adjudication in that case is simply that payment of such a judgment is not a transfer by decedent's will and hence cannot be taxed as such a transfer, (the tax there set aside had been levied as on a testamentary transfer to the judgment creditor); that it is not a transfer by will to the judgment creditor but a recovery because of the failure to transfer to him by will. It does not in fact adjudicate that the judgment so recovered is to be deducted as a debt in computing the taxes on the transfers actually made by the will, — although some of the expressions in the opinion would indicate views tending in that direction; and indeed it would seem that possibly such deduction should be made. However we are not required to decide that point in the present case. It is to be observed however that such deduction would be the deduction of an amount ascertained and established as a "debt" of decedent; and that in the instant case there has been no such ascertainment or establishment, nor is it established even that if such a suit had been brought it would have resulted in a judgment for $19,592 or any other sum. Assuming that it would have resulted in a judgment for some sum in favor of the claimant, it has not been established, and cannot be ascertained, in this proceeding, what that sum would have been.
The commissioner, therefore, for the reasons stated, was correct in declining to deduct the $19,592 as a debt of decedent to be deducted under the statute in computing the value of the transfers which were in fact effected by the will. That being the sole ground stated in the petition of appeal as reason for reversal, the natural result would be a decree in favor of respondent.
While such a decree would doubtless be justified on the basis of the technical situation, it may not be amiss to consider the matter further, along broader lines, rather than to rest the determination solely upon that narrow ground.
The tax under our statute is a transfer tax measured by the value of the property transferred and passing to the ultimate *Page 617 
beneficiaries. Bugbee v. Roebling, 94 N.J. Law 438,111 Atl. Rep. 29; In re Dellinger, 94 N.J. Eq. 409, 120 Atl. Rep. 27. In assessing the tax on a transfer to a residuary beneficiary, therefore, it was requisite, even before the enactment in 1922 of the statutory provision for deductions, to take into account in computing the value of the testamentary transfer to such a beneficiary, the debts and administration expenses, — In reDellinger, supra, at p. 416, — and the federal estate tax, —Bugbee v. Roebling, supra. The amount of tax on such a transfer cannot lawfully exceed the figure obtained by applying the statutory rate to the value of the property which the will directs shall pass to such beneficiary; and that which the will directs shall so pass is (either by express or implied provision) the property remaining after the payment of the debts and administration expenses as well as other prior legacies and devises. The portion of decedent's estate which goes to creditors, notwithstanding the payment of debts is directed by the will, does not justify the imposition of a tax as on a transfer to the creditors, — Bente v. Bugbee, supra, — and certainly cannot be included in the computation of the tax on the transfer to the residuary beneficiaries.
It would seem, then, that if the property which the will directs shall go to such beneficiary is reduced by any legal rights anterior in existence and operation to the operation of the testamentary transfer to such beneficiary, the tax leviable upon such testamentary transfer must be computed and assessed accordingly. A federal gift tax, imposed on the testamentary benefaction received by the legatee, could not be taken into consideration in computing the tax on the testamentary transfer, even if the statute imposing such gift tax required the executor to deduct and retain it from the legacy, (so that the amount of money actually received by the legatee was thereby diminished), because such gift tax would not be anterior in existence and operation to the operation of the testamentary transfer; it would arise and operate only because of and subsequent to, the operation of the testamentary transfer to the legatee. But the operation of a tax on the estate left by the decedent would be anterior to the operation of the testamentary transfer. *Page 618 
In the case of gift of residuary estate by a testator, the property left by testator is primarily subject to the payment of his debts and this legal right of his creditors operates on that property anterior to the operation of the transfer to the residuary beneficiaries. Only the net balance after payment of these creditors ever becomes the subject of the ultimate succession of the residuary beneficiaries; and the transfer tax, by the statutory direction, is measured and computed on the value of the property passing under that ultimate succession. No such tax can be computed on the basis of any of decedent's property thus eliminated from this ultimate succession; there has been no transfer to the residuary legatees, of the property required for the payment of the debts. Hence in such a case as Bente v.Bugbee, supra, it might be entirely logical to hold that no transfer tax could be computed on the basis of such property as was required for the payment of the judgment recovered against the executor or administrator for debt or damages for decedent's breach of contract.
The difference between this latter situation and the one in the instant case is perhaps more readily apparent with respect to the real estate. On the death of testator the legal title to the remainder interest in the real estate immediately vested in the residuary beneficiaries, (subject to possible charge to pay debts). It was transferred to Mr. Watson from those residuary beneficiaries, by a transfer obviously operating subsequently
to the operation of the testamentary transfer. The decree in the chancery suit did not purport to, and did not in fact, prevent or eliminate the testamentary transfer or declare it void or inoperative. The decree directed the residuary legatees to convey this remainder to Mr. Watson; and that transfer of title was accordingly so made (either by execution and delivery of a deed, or by statutory self-execution of the decree). The decree, and the transfer to Mr. Watson pursuant thereto, are necessarily predicated upon a previous, completed, testamentary transfer to the residuary legatees.
(It is true that the decree refers to an agreement of the parties for the settlement of the suit and approves and confirms *Page 619 
that agreement; and that that written agreement recites that the defendants have agreed "to pay the sum of $19,592" to complainant in settlement; but the actual contractual provisions of the agreement are for the very conveyance and assignments provided in the decree. Hence it is quite unnecessary to consider whether that which was done was, in legal contemplation, the result of judicial decree or of the acts of the parties. In either aspect there was no deduction for payment of debt prior to transfer; there was a "re-payment," or transfer back from those to whom it had been transferred by the will.)
That testamentary transfer having in fact occurred, tax was properly assessed thereon by the commissioner, since it is made taxable by the provisions of the statute. It may well be said that the effect of the chancery decree is an adjudication that the testator ought not to have made that transfer, but that is quite immaterial. The transfer did in fact occur; the statute imposes a tax thereon; the commissioner correctly computed and assessed the tax on the testamentary transfer to the residuary beneficiaries.
In In re Soden, 105 N.J. Eq. 595; 148 Atl. Rep. 12, a situation precisely similar was before this court, except that there the commissioner had computed and assessed the tax as on a testamentary transfer to the complainant in the chancery suit. That tax was set aside because there was no such testamentary
transfer to the complainant; the testamentary transfer was to the beneficiaries named in the will. So also in the instant case, but the tax here has been assessed on that transfer to the beneficiaries.
With the equities between the complainant and defendants arising out of decedent's breach of her agreement to transfer to Mr. Watson by will and her actual transfer to the residuary beneficiaries, — even such of those equities as concern the amount of the tax or the liability for the tax, — the commissioner is in no wise concerned. They were subject to determination either by the parties themselves, or in the chancery suit. — (and in the instant case the agreement shows that they were taken into consideration). *Page 620 
That which is true as to the devise of the realty is also true as to the gift of personalty. The chancery decree directs theexecutors to pay some $10,000 to complainant and to assign and transfer to him certain specified personalty. It might be argued that the effect of that decree was to adjudicate that the executors held that personal property in trust for the complainant, and to prevent the occurrence of any transfer of the personalty to the residuary beneficiaries. Not so. Although by operation of law the will effectuated the transfer to the executors only, and not to the residuary legatees, of the legal title to the personalty, the equitable title to the residuary personalty was transferred to the legatees at the same instant. The chancery decree prevented the transfer of the legal title to the legatees from ever occurring; but it did not prevent that transfer of the equitable title. Transfers of equitable interests are just as taxable under the statute as transfers of legal title.
The situation is not altered if the chancery decree be left entirely out of consideration and the transfer of the additional property to Mr. Watson be considered as having been effectuated by the agreement of the parties. Such agreement could no more affect the taxability of the actual testamentary transfers in the instant case than in the cases of In re Gould, 105 N.J. Eq. 598,184 Atl. Rep. 731; affirmed, 8 N.J. Mis. R. 798,151 Atl. Rep. 743; affirmed, 108 N.J. Law 197, 154 Atl. Rep. 632 and In reO'Neill, 111 N.J. Eq. 378, 162 Atl. Rep. 425.
The tax will be affirmed.
 *Page 1